Pablo LOPEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–81–167–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 30, 1985.

Guadalupe Olvera, III, Brownsville, for appellant.

Reynaldo Cantu, Brownsville, for appellee.

## OPINION

KENNEDY, Justice.

Appellant was convicted of aggravated rape. The trial court assessed punishment at 35 years in the Texas Department of Corrections. On original submission, we reversed appellant's conviction in an unpublished opinion, finding fundamental error in the trial court's charge to the jury. On April 10, 1985, the Court of Criminal Appeals remanded this case to us for further proceedings consistent with the opinion in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1985), which jettisoned the notion of automatic reversible error in cases where the trial court's charge authorizes conviction on a theory not pled in the indictment. We therefore reconsider this case in light of *Almanza.* The indictment alleged that appellant did:

> intentionally and knowingly by force and threats, and without consent, have sexual intercourse with (the complainant) a female, not the wife of the Defendant, and the said Defendant compelled submission to said rape by threats of serious bodily injury and death to be imminently inflicted upon the said (complainant) ...

The fifth paragraph of the charge authorized the jury to find appellant guilty of aggravated rape. The court charged the jury as follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 14th day of March, 1980, in Cameron County, Texas, the Defendant, Pablo Lopez, did, then and there unlawfully and intentionally and without the consent and against the will of (complainant), a female, have sexual intercourse with the said (complainant), and the said (complainant) was not then and there the wife of the Defendant, Pablo Lopez, and that the Defendant used force on (complainant) on the occasion in question, as well as threats, to accomplish the sexual intercourse, and that such force was sufficient to overcome such earnest resistance as might reasonably be expected under the circumstances at the time, and that such threat or threats, if any, were such as would prevent resistance by a woman of ordinary resolution under the same or similar circumstances because of a reasonable fear of harm, and that the

Defendant, *in the course of the same criminal episode as the alleged rape caused serious bodily injury to (complainant)* or compelled submission to the rape by threat of death or serious bodily injury to be imminently inflicted on her, then you will find the Defendnat (sic) guilty as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the Defendant not guilty. (emphasis ours).

In reversing appellant's conviction on original submission we stated:

The indictment alleged a single theory of aggravation, namely, that the appellant compelled submission to the rape by threat of serious bodily injury and death to be imminently inflicted on anyone. TEX. PENAL CODE ANN. SEC. 21.-03(a)(2) (Vernon 1974). The charge, in addition to submitting this theory, also submitted the theory of aggravation described in Sec. 21.02(a)(1), namely, that the defendant *caused* serious bodily injury to the victim. Submission of this second theory when it was not pleaded in the indictment was fundamental error.

■ *Almanza v. State,* 686 S.W.2d 157, held that if no proper objection was made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he has not had a fair and impartial trial—in short, "egregious harm." *Almanza* at 171. Under this newly articulated standard, the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Almanza* at 171.

The evidence shows that on the evening of March 14, 1980, complainant, donned in leotards, was exercising in front of the television in her living room in Brownsville. Her two male roommates were elsewhere and she was home alone. Sometime around 11:00 p.m. she heard a noise at the door and went to investigate. A man whom she identified as appellant grabbed her arm, entered her house, and pointed a knife at her throat. She was told to shut up if she did not want to be hurt. Appellant then dragged her through the house by her leotards, slammed her up against a wall and proceeded to have sexual intercourse with her. Somewhat later, another man—identified by the complainant as a juvenile—came in with a shotgun and a rifle, pointed one of the weapons at her face, and threatened her. The two men then pulled her outside where appellant tried to put his penis in her anus. Complainant struggled and appellant then changed to complainant's mouth. At this point both the juvenile and appellant penetrated the complainant's mouth and vagina, swapping positions after awhile. Complainant was then taken back inside the house where appellant penetrated her vagina and mouth with his penis and her anus with his fingers. After more abuse she was dragged back outside the house where she eventually broke her captives' grip and stopped a passing motorist who drove her a short distance to her brother's house. All told, complainant testified that she had been "raped" seven times by appellant and twice by the juvenile. Complainant also testified that she had begged appellant to let her wear something outside on the night of the rape as it was cold, and that she chose a white robe hoping someone would see her.

Appellant testified in his own defense. He stated that he had seen complainant a couple of times before the alleged rape and that she had always been friendly to him. He said that complainant opened the door and invited him into the house. She was wearing a robe, tied only at the waist, and he could see her legs and breasts. He admitted having sexual intercourse with complainant inside the house but said it was consensual. He denied having sex outside of the house. According to appellant, when he and the juvenile entered the house he remained in the living room and talked with the complainant for ten to fifteen min-

utes during which time the juvenile was elsewhere in the house and he and complainant had sex. He testified that complainant got nervous when the juvenile came into the room with a gun and she told them both to leave but that the juvenile then forced her to have sex.

Shortly after complainant's escape, she was taken to a medical center and examined. The examination showed no physical evidence of rape although complainant's vagina had been irritated. No male pubic hairs, seminal fluid, or sperm were discovered.

The motorist who stopped and drove complainant to her brother's house testified. The account given by the motorist was consistent with the complainant's account. The motorist saw a man running from the scene but was unable to identify appellant.

■ The evidence adduced at trial was ample to support the jury's verdict. We now turn to whether the improper charge constitutes fundamental error. *Almanza* requires us to review the evidence, its weight and probative value, and the issues in the case. Both sides introduced evidence that sexual intercourse had occurred, thus penetration was not an issue. Appellant's identity was not an issue. The only issue at trial was whether the sexual intercourse was *consentual.* In this regard, appellant solicited evidence showing that complainant had not suffered any serious bodily injury, and indeed the evidence clearly shows that complainant suffered no serious bodily injury.

*Almanza* also instructs a reviewing court to examine the argument of counsel. In this case, however, the argument of counsel was not designated by appellant to be a part of the record on appeal. We therefore are unable to find any harm to appellant from the jury argument.

*Almanza* also instructs an appellate court to examine the trial court's charge as whole. We have done so and cannot find anything in the trial court's charge which constitutes egregious harm. Nor does

"any other relevant information revealed by the record of the trial as a whole" show that any of the parties contemplated the case to have an issue concerning serious bodily injury. There simply was no evidence that the complainant suffered serious bodily injury. By way of contrast, however, there was overwhelming evidence that appellant threatened the complainant with serious bodily injury throughout the course of the offense. Thus, although the trial court's charge authorized conviction for aggravated rape on a theory that appellant caused complainant serious bodily injury, the evidence supports only the aggravated theory alleged in the indictment. The error thus could not have affected the jury's determination of appellant's guilt and reversal is not required. Appellant's sole ground of error is overruled.

The judgment of the trial court is AFFIRMED.

Opinion ordered published. TEX.R.CRIM. APP.P. 207